UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DENIA FULLER,

        Petitioner,

                                             CASE NO. 05-CV-71113-DT
v.                                         HONORABLE GERALD E. ROSEN

CLARICE STOVALL,

        Respondent.
_____/

**OPINION AND ORDER DENYING PETITION
FOR WRIT OF HABEAS CORPUS**

**I.    Introduction**

Petitioner Denia Fuller, a state prisoner presently confined at the Scott Correctional Facility in Plymouth, Michigan, has filed a *pro se* petition for writ of habeas corpus under 28 U.S.C. § 2254. Petitioner challenges her second-degree murder and felony firearm convictions which were imposed following a jury trial in the Wayne County Circuit Court in 2002. Petitioner was sentenced to consecutive terms of 12 to 20 years imprisonment and two years imprisonment on those convictions. In her pleadings, Petitioner raises claims concerning the jury instructions and the effectiveness of trial counsel. For the reasons stated below, the petition for writ of habeas corpus is denied.

**II.    Facts and Procedural History**

Petitioner's convictions stem from the shooting death of Sherenna Shaw ("Shaw") in Detroit, Michigan on July 23, 2001. Shaw died from a single gunshot wound to the chest. The

1

testimony at trial revealed that the shooting arose from an ongoing dispute between Petitioner's niece, Felicia Fuller-Moody ("Felicia"), and Shaw who believed that Felicia was having an affair with Shaw's husband. Petitioner was charged with first-degree murder and possession of a firearm during the commission of a felony.

At trial, Detroit Police Detective Daniel Stewart testified that he questioned Petitioner about the shooting after she signed a constitutional rights waiver. Petitioner's statement was admitted into evidence at trial. In that statement, Petitioner explained that she went to Shaw's residence with Felicia and other family members to fight with Shaw following several telephone calls between the parties. LaWanda Fuller ("Wanda") and Felicia picked her up and they met Michael Fuller ("Michael") and his girlfriend ("Shea") at a restaurant on Mound and Seven Mile. Felicia exited their car and got into the truck with Michael and Shea. They drove to Shaw's house on Stotter Street where several of Shaw's relatives and some children were present. A confrontation between the parties ensued. Eventually Shaw's uncle ordered them to leave. Michael, Shea, and Felicia walked toward the truck and Petitioner and Wanda went to the car. Petitioner then heard gunshots. With Wanda in the driver's seat, Petitioner fired three or four shots out of the passenger window with a 380 silver automatic gun that she had purchased from Felicia's husband. Petitioner said that she did not plan to shoot Shaw, but admitted that she bent her wrist toward where Shaw was standing. Petitioner claimed that she fired her gun because she believed Shaw's people were shooting at them, but admitted that she saw Michael shoot three or four shots up in the air with a black gun. Petitioner stated that she threw her gun out of the car window on Outer Drive as they drove to Michael's house after the incident.

Several witnesses to the shooting, including some children, testified at trial about their

2

recollections of the incident. They viewed the argument between the parties, observed Michael fire several shots in the air, and saw Petitioner fire several shots toward Shaw who was standing outside in front of her home.

Police testimony established that two guns were recovered during a search of Michael Fuller's residence. Testing indicated that neither of those guns was the murder weapon.

Petitioner did not testify at trial. Her defense was two-fold. First, defense counsel argued that it was impossible for Petitioner to have aimed at the victim from her position as she fired her weapon. Second, defense counsel argued that Petitioner had no motive to harm Shaw and did not shoot with the intent to harm or kill anyone.

At the close of trial, the trial court instructed the jury on the elements of first-degree premeditated murder, the lesser offenses of second-degree murder and involuntary manslaughter, and possession of a firearm during the commission of a felony. The court also instructed the jury on the burden of proof and other matters. Both the prosecutor and defense counsel consented to the jury instructions as given.

Following deliberations, the jury convicted Petitioner of second-degree murder and possession of a firearm during the commission of a felony. The trial court subsequently sentenced her to 12 to 20 years imprisonment on the murder conviction and a consecutive term of two years imprisonment on the felony firearm conviction.

Petitioner filed an appeal as of right with the Michigan Court of Appeals, raising the following claims:

> I. Defendant was deprived of her right under the 14th Amendment to the United States Constitution and under Section 17, Article 1, Michigan Constitution 1963 to due process and a fair trial when the trial judge failed and omitted to define for the jurors in the court's charge terms of art

which are complex and generally unknown to persons not trained in the law.

II. Defendant was deprived of her right under the 14th Amendment of the United States Constitution and under Section 17, Article 1, Michigan Constitution 1963 not to be convicted of crime save that the prosecution prove beyond a reasonable doubt each fact needed to constitute the crime charged when the trial court instructed the jurors that they could convict the defendant of "felony firearm" without their finding beyond a reasonable doubt that the defendant had committed the predicate felony necessary to support a conviction for possession a firearm in the commission of a felony.

III. Defendant was deprived of her right under the 14th Amendment to the United States Constitution and under Section 17, Article 1, Michigan Constitution 1963 to due process and a fair trial and of her right to a jury trial under the 6th Amendment to the United States Constitution and under Section 20, Article 1, Michigan Constitution 1963 when the trial judge intruded upon the freedom of the jurors to adjudicate the facts in the case and when the trial judge coerced the jurors to convict the defendant of a higher degree of crime charged than they might have been prone to do in the absence of the coercive instruction.

IV. Defendant was deprived of her right under the 14th Amendment to the United States Constitution and under Section 17, Article 1, Michigan Constitution 1963 to due process and a fair trial and of her right to a jury trial under the 6th Amendment to the United States Constitution and under Section 20, Article 1, Michigan Constitution 1963 to trial by jury when the trial judge restricted the domain of the jurors to a verdict of guilty or not guilty and failed to instruct the jurors that they had the right to disagree among themselves and return no verdict.

V. Defendant was deprived of his right under the 6th Amendment to the United States Constitution and under Section 20, Article 1, Michigan Constitution 1963 to effective assistance of counsel on the trial level when his trial counsel (1) failed and omitted to object to the trial judge's failure to explain to the jurors what "justifiable" killing in law was and to explain to the jurors what an "excusable killing" was and what "circumstances" would "reduce" a killing "to a lesser crime"; (2) failed and omitted to object to the trial judge's omission to instruct the jurors that when considering the charge of "felony firearm" they had to find proven beyond a reasonable doubt that defendant had committed murder of the first-degree or a lesser charge; (3) failed and omitted to object when the trial judge intruded upon the freedom of the jurors to decide the facts as

> they saw them and to acquit their right to dispense mercy and leniency according to their rights as to what is just and meet the circumstances of the case in which they sit in judgment; (4) failed and omitted to object to the trial judge's omission to inform the jurors that they had the right to disagree among themselves and to come to no unanimous verdict, and that they had the right under such circumstances to return no verdict on a particular count.

The Michigan Court of Appeals affirmed Petitioner's convictions and sentence. *People v. Fuller*, No. 244906 (Mich. App. Feb. 12, 2004) (unpublished). Petitioner filed an application for leave to appeal with the Michigan Supreme Court raising the same issues, which was denied. *People v. Fuller*, 471 Mich. 868, 683 N.W.2d 673 (2004).

Petitioner thereafter filed her federal habeas petition, raising the same jury instruction and ineffective assistance of counsel claims presented to the state courts on direct appeal of her convictions. Respondent has filed an answer to the petition, asserting that the claims should be denied based upon procedural default and/or for lack of merit. Petitioner has filed a reply to that answer.

### III. Standard of Review

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), codified at 28 U.S.C. § 2241 *et seq.*, govern this case because Petitioner filed his habeas petition after the AEDPA's effective date. *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997). The AEDPA provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

>   (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §2254(d) (1996).

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)); *see also Bell v. Cone*, 535 U.S. 685, 694 (2002). "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also Bell*, 535 U.S. at 694. However, "[i]n order for a federal court find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also Williams*, 529 U.S. at 409.

Section 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with clearly established federal law as determined by the Supreme Court at the time the state court renders its decision. *See Williams*, 529 U.S. at 412; *see also Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003). Section 2254(d) "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme

Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002); *see also Mitchell*, 540 U.S. at 16. While the requirements of "clearly established law" are to be determined solely by the holdings of the Supreme Court, the decisions of lower federal courts are useful in assessing the reasonableness of the state court's resolution of an issue. *See Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Dickens v. Jones*, 203 F. Supp. 354, 359 (E.D. Mich. 2002).

Lastly, §2254(e)(1) requires that this Court presume the correctness of state court factual determinations. 28 U.S.C. § 2254(e)(1). A habeas petitioner may rebut this presumption only with clear and convincing evidence. *Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998).

**IV. Analysis**

**A. Jury Instruction Claims**

Petitioner asserts that she is entitled to habeas relief because the trial court erred in instructing the jury by failing to explain to the jurors what a "justifiable" or "excusable" killing would be or what circumstances would reduce the offense to a lesser crime, by failing to instruct the jurors by what standard of proof they had to find that she committed an underlying felony before they could convict her of felony firearm, by instructing the jury that they must stop deliberations on lesser offenses once they agreed to a verdict on a greater charge, and by giving a unanimity instruction without instructing the jury that they could reach no verdict. Respondent contends that these claims are barred by procedural default and lack merit.

Habeas relief may be precluded on claims that a petitioner has not presented to the state courts in accordance with the state's procedural rules. *See Wainwright v. Sykes*, 433 U.S. 72 (1977); *Couch v. Jabe*, 951 F.2d 94 (6th Cir. 1991). In *Wainwright*, the United States Supreme

Court explained that a petitioner's procedural default in the state courts will preclude federal habeas review if the last state court rendering a judgment in the case rested its judgment on the procedural default. 433 U.S. at 85. In such a case, a federal court must determine not only whether a petitioner has failed to comply with state procedures, but also whether the state court relied on the procedural default or, alternatively, chose to waive the procedural bar. "A procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on a state procedural bar." *Harris v. Reed*, 489 U.S. 255, 263-64 (1989). The last *explained* state court judgment should be used to make this determination. *Ylst v. Nunnemaker*, 501 U.S. 797, 803-05 (1991). If the last state judgment is a silent or unexplained denial, it is presumed that the last reviewing court relied upon the last reasoned opinion. *Id*.

Here, the Michigan Court of Appeals rendered the last reasoned opinion. In denying relief on Petitioner's jury instructions claims, the court relied upon a state procedural bar -- Petitioner's failure to object to the instructions at trial. *See Fuller*, No. 244906 at *1. The failure to make a contemporaneous objection is a recognized and firmly-established independent and adequate state law ground for refusing to review trial errors. *See People v. Carines*, 460 Mich. 750, 763, 597 N.W.2d 130 (1999); *People v. Stanaway*, 446 Mich. 643, 687, 521 N.W.2d 557 (1994); *see also Coleman v. Thompson*, 501 U.S. 722, 750-51 (1991). Moreover, a state court does not waive a procedural default by looking beyond the default to determine if there are circumstances warranting review on the merits. *See Paprocki v. Foltz*, 869 F.2d 281, 285 (6th Cir. 1989). Plain error review does not constitute a waiver of state procedural default rules. *See Hinkle v. Randle*, 271 F.3d 239, 244 (6th Cir. 2001); *Seymour v.*

8

*Walker*, 224 F.3d 542, 557 (6th Cir. 2000). Nor does a state court fail to sufficiently rely upon a procedural default by ruling on the merits in the alternative. *See McBee v. Abramajtys*, 929 F.2d 264, 267 (6th Cir. 1991). The Michigan Court of Appeals denied these claims based upon Petitioner's failure to object at trial.

A state prisoner who fails to comply with a state's procedural rules waives the right to federal habeas review absent a showing of cause for noncompliance and actual prejudice resulting from the alleged constitutional violation, or a showing of a fundamental miscarriage of justice. *See Coleman*, 501 U.S. at 753; *Gravley v. Mills*, 87 F.3d 779, 784-85 (6th Cir. 1996). Petitioner alleges the ineffective assistance of trial counsel as cause to excuse her default. Petitioner, however, cannot establish that counsel erred or that she was prejudiced as her jury instruction claims lack merit.

In order for habeas relief to be warranted on the basis of incorrect jury instructions, a petitioner must show more than that the instructions are undesirable, erroneous or universally condemned. Rather, taken as a whole, they must be so infirm that they rendered the entire trial fundamentally unfair. *See Estelle v. McGuire*, 502 U.S. 62, 72 (1991); *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977). If an instruction is ambiguous and not necessarily erroneous, it violates the Constitution only if there is a reasonable likelihood that the jury has applied the instruction improperly. *See Binder v. Stegall*, 198 F.3d 177, 179 (6th Cir. 1999). A jury instruction is not to be judged in artificial isolation, but must be considered in the context of the instructions as a whole and the trial court record. *See Grant v. Rivers*, 920 F. Supp. 769, 784 (E.D. Mich. 1996).

Additionally, the failure to give an instruction that is supported by the evidence does not automatically entitle a petitioner to habeas relief; the failure to instruct must have rendered the

petitioner's trial fundamentally unfair. *See Maes v. Thomas*, 46 F.3d 979, 984-85 (10th Cir. 1995); *Nickerson v. Lee*, 971 F.2d 1125, 1137 (4th Cir. 1995). A failure to instruct does not deprive a petitioner of fundamental fairness where the instructions as a whole adequately present the defense theory to the jury. *See Duckett v. Godinez*, 67 F.3d 734, 743 (9th Cir. 1995). "An omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law." *Henderson*, 431 U.S. at 155. State law instructional errors rarely form the basis for federal habeas corpus relief. *See Estelle*, 502 U.S. at 71-72.

Petitioner first asserts that the trial court erred in failing to instruct the jury on what a "justifiable" or "excusable" killing was or what "circumstances" would reduce the offense to a lesser crime. This claim lacks merit. The record reveals that the trial court properly instructed the jury on the elements of the charged offenses and lesser offenses and those instructions were consistent with the standard jury instructions. Further, the trial testimony did not support a theory that the killing was justified or excused. Where, as here, the instructions as a whole adequately convey the elements of the offenses and the defense theory of the case to the jury, a petitioner is not entitled to habeas relief based on the trial court's failure to give a specific instruction. *See, e.g.*, *Rodriguez v. Young*, 906 F.2d 1153, 1166 (7th Cir. 1990). The trial court's instructions, as given, did not deny Petitioner a fundamentally fair trial.

Petitioner next asserts that the trial court failed to instruct the jury that each element of felony firearm, *i.e.* that Petitioner committed the underlying felony, must be proven beyond a reasonable doubt. This claim is belied by the record. The trial court instructed the jury that each element of the charged offenses, including the felony firearm charge, had to be proven beyond a reasonable doubt. Further, even if the trial court was unclear, Petitioner cannot

establish that she was prejudiced given that the jury convicted her of the felony of second-degree murder and it was undisputed that she was armed with a dangerous weapon. Petitioner has not shown that the trial court erred and/or that she was denied a fair trial.

Petitioner next asserts that the trial court interfered with the jury's power of leniency by instructing the jury on the order of deliberations, *i.e.*, that they must first consider the charge of first-degree murder and may not consider lesser offenses if they agree to Petitioner's guilt on that charge, and so on. The trial court's instructions, however, were consistent with the standard jury instructions and were not improper under state law. The instructions did not interfere with the province of the jury, nor render Petitioner's trial fundamentally unfair.

Petitioner next asserts that the trial court erred in giving a unanimity instruction without instructing the jury that they could reach no verdict. Petitioner has not shown that the unanimity instruction rendered her trial fundamentally unfair. First, the trial court properly instructed the jury that the verdict must be unanimous on each count as a matter of state law. Second, the court specifically instructed the jurors that while they should try to reach an agreement, they should not give up their honest opinions about the case just because others may disagree or for the sake of reaching a verdict. Third, Petitioner cannot establish that she was prejudiced by the court's instructions as the jurors were polled and indicated their agreement with the verdict. Lastly, the court notes that while Michigan law provides a right to a unanimous verdict in criminal cases, there is no federal constitutional right to a unanimous verdict in criminal cases. *See Apodaca v. Oregon*, 406 U.S. 404, 406 (1972) (state criminal conviction by less than unanimous jury does not violate Sixth Amendment right to trial by jury); *see also Schad v. Arizona*, 510 U.S. 624, 631 (1991). Petitioner has not shown that the

unanimity instruction violated state law or denied her a fair trial.  Petitioner has thus failed to establish that the trial court erred in instructing the jury or that the jury instructions, considered as a whole, rendered her trial fundamentally unfair.

Lastly, Petitioner has not established that a fundamental miscarriage of justice has occurred.  The miscarriage of justice exception requires a showing that a constitutional violation probably resulted in the conviction of one who is actually innocent.  *Schlup v. Delo,* 513 U.S. 298, 326-27 (1995).  "'[A]ctual innocence" means factual innocence, not mere legal insufficiency."  *Bousley v. United States*, 523 U.S. 614, 624 (1998).  "To be credible, [a claim of actual innocence] requires petitioner to support his allegations of constitutional error with new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial."  *Schlup*, 513 U.S. at 324.  Petitioner has made no such showing.  Her jury instruction claims are thus barred by procedural default, otherwise lack merit, and do not warrant federal habeas relief.

### B. Ineffective Assistance of Counsel Claim

Petitioner relatedly asserts that she is entitled to habeas relief because trial counsel was ineffective for failing to object to the jury instructions at trial.  Respondent contends that this claim lacks merit.

In *Strickland v. Washington,* 466 U.S. 668 (1984), the United States Supreme Court set forth a two-pronged test for determining whether a habeas petitioner has received the ineffective assistance of counsel.  First, a petitioner must prove that counsel's performance was deficient.  This requires a showing that counsel made errors so serious that he or she was not functioning as counsel as guaranteed by the Sixth Amendment.  466 U.S. at 687.  Second, the petitioner

12

must establish that the deficient performance prejudiced the defense. Counsel's errors must have been so serious that they deprived the petitioner of a fair trial or appeal. *Id.*

With respect to the performance prong, a petitioner must identify acts that were "outside the wide range of professionally competent assistance" in order to prove deficient performance. *Id.* at 690. The reviewing court's scrutiny of counsel's performance is highly deferential. *Id.* at 689. The court must recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Id.* at 690.

To satisfy the prejudice prong under *Strickland*, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is one that is sufficient to undermine confidence in the outcome. *Id.* "On balance, the benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the [proceeding] cannot be relied on as having produced a just result." *McQueen v. Scroggy*, 99 F.3d 1302, 1311-12 (6th Cir. 1996) (quoting *Strickland*, 466 U.S. at 686).

Applying the *Strickland* standard, the Michigan Court of Appeals concluded that Petitioner had not established that defense counsel was ineffective because the jury instructions were appropriate under Michigan law. *See Fuller*, No. 244906 at *1-2. Having reviewed the matter, this Court finds that the Michigan Court of Appeals' decision is neither contrary to *Strickland* nor an unreasonable application of federal law or the facts. Given the Court's determination that Petitioner's jury instruction claims lack merit, Petitioner cannot establish that

13

defense counsel was deficient and/or that she was prejudiced by counsel's conduct in failing to object to the instructions. Further, given the significant evidence of guilt presented at trial, including Petitioner's own police statement and the eyewitness testimony, Petitioner cannot establish that she was prejudiced by counsel's conduct. Habeas relief is thus not warranted on this claim.

**V.     Conclusion**

For the reasons stated, this Court concludes that Petitioner is not entitled to federal habeas relief on the claims presented in her petition.

Accordingly,

**IT IS ORDERED** that the petition for writ of habeas corpus is **DENIED** and **DISMISSED WITH PREJUDICE**.


s/Gerald E. Rosen
Gerald E. Rosen
United States District Judge

Dated:  May 23, 2007

I hereby certify that a copy of the foregoing document was served upon counsel of record on May 23, 2007, by electronic and/or ordinary mail.

s/LaShawn R. Saulsberry
Case Manager